

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ORIGINAL

TIMOTHY K. GREY,                              §
                                              §
              Plaintiff,                      §
                                              §          CIVIL ACTION NO.
VS.                                           §
                                              §          3:04-CV-1164K
DALLAS INDEPENDENT SCHOOL                     §
DISTRICT, and MANUEL VASQUEZ,                 §
CEDRIC PORTLEY, DAN CLAXTON,                  §
GARY HODGES, LUIS TAMEZ,                      §
Individually,                                 §
                                              §
              Defendants.                     §

## MEMORANDUM OPINION and ORDER

Before the Court is Defendant Dallas Independent School District's ("DISD"), Cedric Portley ("Portley"), Dan Claxton ("Claxton"), Gary Hodges ("Hodges"), and Luis Tamez' ("Tamez") motion for summary judgment. Also before the court is Defendant Manuel Vasquez' ("Vasquez") motion for summary judgment. Because the Court concludes that all of Plaintiff Timothy Grey's ("Grey") claims fail as a matter of law, the Court **GRANTS** summary judgment for all Defendants on all of Grey's claims.

I.    **Background Facts**

This case arises out of Grey's termination from employment with DISD. Grey worked as a police officer with the Safety and Security Division of the DISD from approximately February 5, 2001 until August 15, 2002. The primary sequence of events giving rise to this action began in January 2002 when Grey's patrol car privileges were revoked due to the alleged suspension of his driver's license. Grey disputes that his license

was ever suspended.  Lieutenant Portley and Captain Claxton, also with the DISD Safety and Security Division, requested a meeting with Grey to discuss the status of his driver's license suspension.  Grey agreed to the meeting, but requested that an attorney or other witness be present.  Shortly thereafter, Chief Vasquez informed Grey that he was being removed from patrol duty and ordered to stay in the headquarters building.  Grey alleges that this action was taken because he had requested an attorney.

On February 15, 2002, Grey filed a grievance (the "first grievance") with DISD claiming that Defendants Vasquez, Portley, and Claxton had created a hostile work environment in retaliation for his demand for an attorney.  Grey alleges that Vasquez, Portley, and Claxton continued to create a hostile work environment by subjecting him to numerous disciplinary actions in retaliation for the filing of his first grievance.

On April 30, 2002, Grey received a letter from DISD placing him on administrative leave and recommending his termination.  Grey claims that this action was also taken in retaliation for the filing of his first grievance.  Grey then filed another grievance (the "second grievance") with DISD on May 2, 2002, to appeal the recommendation of termination.

On August 2, 2002, DISD convened an administrative hearing to consider Grey's case.  The administrative hearing panel sustained the recommendation to terminate Grey and issued a decision on August 14, 2002, terminating his employment with DISD.  The administrative panel concluded that Grey failed to provide any evidence that DISD had violated district policy or had acted arbitrarily or capriciously.  Grey, however, claims that he did not receive his full grievance or appellate rights under DISD policy for either his first or second grievances.

- 2 -

Grey brought this action *pro se*, but his attorney filed an entry of appearance on August 25, 2005, before Defendants' motions for summary judgment were filed. Although Grey fully responded to the Defendants' motions to dismiss and motion for judgment on the pleadings, he has failed to respond to the Defendants' motions for summary judgment. The Court notes that Grey has failed to come forward with any summary judgment evidence supporting his claims.

## II.    Summary Judgment Legal Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322-25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57(1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, when no response to the motion for summary judgment is filed, the court may accept the movant's version of the facts as true and grant summary judgment when a prima facie showing for entitlement to judgment is made. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir.1988).

- 3 -

III.   **Grey Failed to Establish a Prima Facie Case for Discrimination under Title VII and §1983**

Grey has brought claims for discrimination under 42 U.S.C. §1983 and under Title VII of the Civil Rights Act, as amended at 42 U.S.C. 2000e et seq.  Because Grey has failed to establish a prima facie case of race discrimination in that he has failed to show that he was treated differently than others similarly situated, the Court **GRANTS** summary judgment for all defendants on Grey's Title VII and §1983 discrimination claims.

A.   **Legal Standard**

Discrimination claims brought under §1983 and Title VII are analyzed under the same evidentiary framework. *See Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).  In order to prevail on a claim for race discrimination, Grey must establish a prima facie case by showing that he was (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated.  *See Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 941 (5th Cir. 2005).  The *McDonnell Douglas* framework requires a plaintiff to first make out a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973).  The burden of production then shifts to the defendants to establish legitimate non-discriminatory reasons for their actions. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).  If the defendant meets this burden of production, the burden of persuasion then shifts back to the plaintiff to demonstrate that there is a material issue of disputed fact as to discrimination. *Id*.

- 4 -

### B.    Analysis of Grey's Discrimination Claims

Because Grey bears the burden of proof on his discrimination claims, Federal Rule 56 requires him to go beyond the pleadings and designate specific facts showing a genuine issue for trial. *See Celotex*, 477 U.S. at 324.  The Court finds that Grey has failed to offer specific facts showing that he was treated differently from others similarly situated.  Grey's complaint merely alleges that "DISD had an unwritten official policy of denying Black employees their grievance hearings while granting White employees their full procedural protections."  Allegations setting forth conclusory facts and conclusions of law, however, are insufficient to survive a motion for summary judgment.  *See Galindo v. Precisions Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).  Significantly, Grey has failed to identify any employee with whom he was similarly situated but treated differently.  Without such a showing, Grey cannot establish a prima facie case of discrimination.  *See Abarca*, 404 F.3d at 941.

Even if this Court were to conclude that Grey established a prima facie case of discrimination under Title VII and 1983, the Court finds that Defendants have rebutted any presumption of discrimination.  Defendants have produced numerous non-discriminatory reasons for terminating Grey's employment, including several specific instances of insubordination and refusal to comply with orders, inappropriate conduct, failure to follow proper police procedure, the suspension of his driver's license, and unprofessional conduct toward co-workers.  These legitimate non-discriminatory reasons

offered by Defendants are sufficient to defeat any presumption of discrimination that could have been raised by Grey's pleadings. *See Patrick v. Ridge*, 394 F.3d at 315. Because Grey has not attempted to show that any of these legitimate reasons offered by defendants are a mere pretext, or that race was a motivating factor in his termination, his claims for discrimination must fail. *See id.*; *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). The Court therefore **GRANTS** summary judgment for all Defendants on Grey's Title VII and 1983 discrimination claims.

## IV.   Grey's Retaliation Claims Fail as a Matter of Law

### A.   Grey's First Amendment Retaliation Claim Under §1983

Because Grey's First Amendment claim does not involve a matter of public concern, his retaliation claim under §1983 fails as a matter of law. In order to establish a First Amendment retaliation claim under §1983, Grey must show that (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on the matter of public concern outweighed DISD's interest in promoting efficiency; and (4) the adverse employment action was motivated by his protected speech. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 320 (5th Cir. 2004). Because Grey was speaking only as an employee on matters addressing his personal concern, his First Amendment 1983 claim must fail. *See Ayoub v. Texas A & M Univ.*, 927 F.2d 834, 837 (5th Cir. 1991).

- 6 -

This Court concludes that Grey's speech does not protect him from discharge under the First Amendment because his speech focused on his own individual interests rather than a matter of public concern. Matters of public concern include free and open debate about public affairs. *See Connick v. Myers*, 461 U.S. 138, 145 (1983). Speech addressing matters of public concern is entitled to special protection under the First Amendment. *Id*. at 145. Here, Grey is an employee of a public agency, the DISD. Because almost anything that occurs within a public agency could concern the public, this Court must determine whether Grey's speech was made primarily in his role as a citizen or as an employee. *See Ayoub* at 837. Speech made primarily in a public employee's role as a citizen does not address matters of public concern. *Id*.

The plaintiff in *Ayoub*, a professor at Texas A & M University, alleged that he was retaliated against for complaining about the university's discriminatory practice of paying foreign-born professors less than native-born professors. *Ayoub*, 927 F.2d at 835. The Fifth Circuit Court of Appeals held that the plaintiff's speech, which consisted of verbal complaints and the filing of a salary grievance, was not a matter of public concern, because it focused only on his own individual compensation. *Id*. at 837. The Court's holding rested on the conclusion that the plaintiff had spoken as an employee on matters of purely personal interest, rather than as a citizen on matters of public concern. *Id*.

This Court likewise concludes that Grey's speech focused on his own individual interests. Grey's complaint alleges that DISD retaliated against him because (1) he

requested the presence of an attorney or other witness during a meeting with Defendants

Portley and Claxton, and (2) he filed grievances with DISD.  Having considered Grey's

request for an attorney and reviewed both grievances filed by Grey, the court finds no

evidence that Grey's speech involved a matter of public concern.  As in *Ayoub*, Grey's

speech, consisting of his attorney request and grievances, focused solely on his own

employment conditions and personal interests.  Such speech does not protect him from

discharge under the First Amendment.  *See id*. at 837.  The Court therefore **GRANTS**

summary judgment for all Defendants on Grey's First Amendment retaliation claims.

### B.   Grey's Title VII Retaliation Claim

Because Grey's Complaint does not allege a prima facie retaliation claim under Title

VII, his claim fails as a matter of law.  To survive summary judgment on a Title VII

retaliation claim, Grey must make a prima facie case by showing that (1) he engaged in an

activity protected by Title VII, (2) an adverse employment action occurred, and (3) a

causal link existed between the protected activity and the adverse action.  *See Banks v. E.*

*Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.2003).  Grey has failed to make

a prima facie case because he has not alleged that he engaged in an activity protected by

Title VII.

Under Title VII, a protected activity is defined as opposition to any practice

rendered unlawful by Title VII.  *Ackel v. Nat'l Communs., Inc.*, 339 F.3d 376, 385 (5th Cir.

2003).  Examples of such opposition include making a charge, testifying, assisting, or

participating in any investigation, proceeding, or hearing *under Title VII*. *Id*. Here, Grey's complaint does not allege opposition to any practice rendered unlawful by Title VII. In fact, the record contains no evidence that Grey opposed any employment practice on the basis of race, color, religion, sex, or national origin.

Grey's complaint alleges that he received a demotion in retaliation for requesting the presence of an attorney or other witness during a meeting with Defendants Portley and Claxton. Grey's demand for an attorney was to determine whether his driver's license had been suspended and had nothing to do with opposing Title VII discrimination and did not amount to a protected activity under Title VII.

Grey further alleges that his termination from DISD was in retaliation for the filing of his first grievance and for his request for an attorney. Having reviewed both grievances that Grey filed with DISD, the Court finds no evidence that Grey engaged in any protected activity under Title VII. In order to constitute a protected activity, Grey's grievances must at least allege that a Title VII violation occurred. *See Green v. Adm's of Tulane Educ. Fund*, 248 F.3d 642, 657 (5th Cir. 2002). Neither grievance filed by Grey, however, makes any reference to a Title VII violation. Because Grey has offered no evidence that he engaged in any activity protected under Title VII, he has failed to establish a prima facie case for Title VII retaliation. The Court therefore **GRANTS** summary judgment for DISD on Grey's Title VII retaliation claim.

- 9 -

**V.    Grey's Fourteenth Amendment Due Process Claims Under §1983 Fail as a Matter of Law**

Grey's Fourteenth Amendment Claims under §1983 fail because he has not alleged a constitutional violation.  In order to state a valid claim for a Fourteenth Amendment violation in a §1983 action, Grey must show that (1) he was deprived of a liberty or property interest, and (2) he was not given adequate procedural protection with respect to the violation. *See Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir. 1985).  Here, Grey has alleged a deprivation of his liberty interest in his reputation and good name, and a deprivation of his property interest in his employment.  Because Grey does not have a constitutionally protected liberty interest in his reputation and good name, or a constitutionally protected property interest in his employment with DISD, the Court **GRANTS** summary judgment for all defendants on Grey's Fourteenth Amendment due process claims under §1983.

**A.    Grey Does Not Have a Protected Liberty Interest in His Reputation or Good Name**

Grey alleges that his lack of opportunity to defend his reputation and good name was a denial of due process of law.  However, the United States Supreme Court has repeatedly held that injury to reputation is not a constitutionally protected liberty interest. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Paul v. Davis*, 424 U.S. 693, 708-09 (1976). The plaintiff in *Siegert* received an "extremely unfavorable" credentials report from his

- 10 -

defendant supervisor, which resulted in the termination of his federal service employment. *Siegert*, 500 U.S. at 228. The plaintiff alleged that defamatory statements in his credentials review, and the lack of process afforded by the credentialing review, amounted to a violation of his due process rights. *Id*. at 232. The Court relied on *Davis* in holding that the plaintiff did not have a constitutionally protected interest in his reputation. *Id*. at 234. Relying on Siegert and *Davis*, this Court holds that Grey does not have a protected liberty interest in his reputation and good name as a matter of law.

**B.     Grey Does not Have a Protected Property Interest in His Employment With DISD**

Grey also alleges that his property interest in his employment was taken from him without due process of law.  Grey's claim fails, however, because he has not demonstrated that he has a clearly established property interest in his employment. *See Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir. 1994), reh'g en banc, 47 F.3d 1427 (5th Cir. 1995). Because Texas is an employment-at-will state, Grey must demonstrate the existence of a specific contract in order to establish a property interest in his employment. *See id*. Although Grey's complaint alleges that he was employed by DISD pursuant to a written employment contract, he has failed to produce any evidence that such a contract existed. Without such evidence, Grey raised no genuine issue of material fact that an employment contract existed nor that he had a protected property interest in his employment. Because Grey has failed to demonstrate a protected liberty or property interest under the

Fourteenth Amendment, the Court **GRANTS** summary judgment for all defendants on Grey's due process claims under §1983.

## VI.    Grey's Civil Conspiracy Claim Under §1985

The Court finds that Grey's allegation of civil conspiracy under §1985(3) is wholly without merit.  Neither Grey's Complaint, nor his subsequent arguments, set forth any operative facts supporting his conspiracy claim.  Grey merely alleges the existence of a conspiracy to deprive him of his civil rights.  Such bald assertions, unsupported by operative facts, are insufficient to support a civil rights conspiracy claim.  *See Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987).  The Court therefore **GRANTS** summary judgment for all defendants on Grey's civil conspiracy claim under §1985.

## VII.   Grey's Claims for Breach of Contract and Intentional Interference With a Contract

Grey has also stated claims for breach of contract and intentional interference with a contract.  However, as previously stated, Grey has failed to produce any evidence tending to show the existence of a valid contract.  The existence of a valid contract is an essential element in a breach of contract claim.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003).  The existence of a valid contract is also an essential element in a claim for interference with an existing contract.  *Prudential Ins. Co. v. Financial Review Servs.*, 29 S.W.3d 74, 77-78 (Tex. 2000).  Because Grey has failed to establish a genuine issue of material fact regarding the existence of a valid contract, the Court **GRANTS** summary

judgment for all defendants on Grey's claims for breach of contract and interference with a contract.

## VIII.  Grey's Claim for Defamation

Finally, Grey brings a state-law defamation claim against defendant Vasquez. Vasquez argues that sovereign immunity shields him from liability arising out of Grey's defamation claim.  The Court agrees.  Unless waived, sovereign immunity protects the State and its officials from lawsuits arising out of tortious conduct. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2000).  Grey's claim against Vasquez in his official capacity is equivalent to a defamation claim against DISD and fails as a matter of law based on sovereign immunity.  *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 146 n.5 (Tex. 1995).  Vasquez has established that these claims are not exempted from sovereign immunity under the Texas Tort Claims Act, and Grey has failed to produce any evidence showing why sovereign immunity does not apply.  The Court therefore **GRANTS** summary judgment for Vasquez on Grey's defamation claim based on sovereign immunity.

## IX.   Conclusion

In conclusion, the Court **GRANTS** summary judgment for Defendants on all of Grey's claims.  Grey has failed to establish a prima facie case for discrimination under Title VII or §1983 because he has not shown that he was treated differently from others similarly situated.  Grey has also failed to state a prima facie case for First Amendment

- 13 -

retaliation under §1983 because his speech did not address a matter of public concern. His Title VII retaliation claim fails because he did not engage in any activity protected by Title VII. Grey's claims for violation of due process under the Fourteenth Amendment and §1983 fail because he has not alleged a violation of constitutionally protected rights, and his §1985 civil conspiracy claims fail because he has not alleged any operative facts to support his claims. Finally, Grey's claims for breach of contract and intentional interference with a contract fail because he has produced no evidence of an existing contract, and his defamation claim fails because sovereign immunity shields Vasquez from liability.

**SO ORDERED.**

Signed December 30th, 2005.

ED KINKEADE
UNITED STATES DISTRICT JUDGE

- 14 -